UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG SHULTS,<br><br>                       Petitioner,<br><br>      v.<br><br>BRIAN BIRKHOLZ ET AL,<br><br>                       Respondent. | Case No. 2:22-cv-07273-JAK (MAR)<br><br>FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Final[1] Report and Recommendation is submitted to the Honorable John A. Kronstadt, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **SUMMARY OF RECOMMENDATION**

Petitioner, Craig Shults ("Petitioner"), proceeding pro se, has filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody ("Petition") pursuant to 28 U.S.C. § 2241. ECF Docket No. ("Dkt.") 1 at 1.[2] Respondent filed an answer

---

[1] This Final Report and Recommendation is identical to the original, except for the fact that the Certificate of Appealability section is omitted, as it was included in error. See Harrison v. Ollison, 519 F.3d 952, 958 (9th Cir. 2008) (noting "[a]lthough state prisoners proceeding under § 2241 must obtain a [certificate of appealability], see § 2253(c)(1)(A), there is no parallel requirement for federal prisoners" who file "legitimate § 2241 petitions"). The recommendation is otherwise unchanged.

[2] All citations to electronically filed documents refer to the CM/ECF pagination.

("Answer"), arguing that Petitioner is not entitled to relief. Dkt. 13. Petitioner filed a Motion for Bail, Dkt. 16, and a Traverse ("Traverse"), Dkt. 17.

For the reasons that follow, the Court recommends: (1) accepting this Report and Recommendation; (2) **DENYING** the Petition; (3) **DENYING** the Motion for Bail; and (4) **DISMISSING** this action with prejudice.

## II.

## BACKGROUND

On September 29, 2022, Petitioner, who is in federal custody and proceeding pro se, constructively filed[3] the instant Petition. Dkt. 1. Petitioner argues he is entitled to the application of 630 days of earned time credit ("ETC") under the First Step Act of 2018 ("FSA"). Dkts. 1 at 3–4; 2 at 11–12. Petitioner contends that, if all his ETCs were applied correctly, he would be entitled to release into a Bureau of Prisons ("BOP") halfway house immediately.

In their Answer, Respondent confirms that BOP determined Petitioner was eligible for ETCs under the FSA, and that, as of October 10, 2022, Petitioner had earned a total of 630 ETCs. Dkt. 13-1 at 3–4. However, as discussed below, Respondent contends Petitioner misapprehends the application of his ETCs and the interaction between his ETCs and his case manager's recommendation. Dkt. 13 at 7–10.

Petitioner filed a Motion for Bail, Dkt. 16, and a Traverse, Dkt. 17. Petitioner maintains that a correct application of his remaining ETCs would entitle him to release into a BOP halfway house immediately. Id.

///
///
///

---

[3] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted).

# III.

# DISCUSSION

## A. APPLICABLE LAW

Under the FSA, "[t]ime credits earned . . . shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). "If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment . . . , [the BOP] may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits." Id. § 3624(g)(3) (emphasis added); see also 28 C.F.R. § 523.44(d)(3) ("The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred."). "Early transfer to supervised release effectively reduces an inmate's sentence by, at max, one year." Mills v. Starr, No. 21-cv-1335, 2022 WL 4084178, at *1, *4 (D. Minn. Aug. 17, 2022); see also, e.g., Roberts v. Cox, No. 4:20-CV-04187, 2022 WL 742489, at *2 (D. S.D. Mar. 11, 2022) ("Further, the BOP cannot grant an inmate more than twelve months of supervised release for earned time credits under the First Step Act." (citing 18 U.S.C. § 3624(g)(3))).

Additionally, "[u]nder the First Step Act, an inmate is only eligible to have their time credits applied if they meet certain criteria under 18 U.S.C. § 3624(g)." Mills, 2022 WL 4084178, at *4. "That criteria includes having accumulated time credits in an amount that is equal to the remainder of [the inmate's] imposed term of imprisonment . . . ." Id.; see also 18 U.S.C. § 3624(g)(1)(A) (eligibility requirement that prisoner "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment"); 28 C.F.R. § 523.44(b)(1) (time credits may be applied toward prerelease custody or early transfer to supervise release if eligible inmate has "[e]arned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment"). "In other words, the

3

First Step Act provides that a prisoner is eligible to have earned time credits applied for supervised release or prelease custody only when []he has earned time credits that equal the remainder of h[is] sentence." Mills, 2022 WL 4084178, at *4; see Adkins v. Engleman, No. CV 22-1988, 2022 WL 14966123, at *2 (C.D. Cal. Sept. 8, 2022) ("Federal courts around the country read Section 3624(g)(1)(A) to mean that the BOP is permitted to apply time credits only once an inmate has earned enough that equal the remainder of her sentence." (quotation omitted)), report and recommendation accepted, 2022 WL 15116425 (C.D. Cal. Oct. 24, 2022).

Courts have explained that this "statutory requirement has a commonsense basis." Adkins, 2022 WL 14966123, at *2. Time credits may be lost, such as through disciplinary infractions. Milchin v. Warden, No. CV 3:22-195, 2022 WL 1658836, at *3 (D. Conn. May 25, 2022); see generally 18 U.S.C. § 3632(e); 28 C.F.R. §§ 523.43, 541.3. When earned time credits equal the remainder of a prisoner's sentence, they "can be immediately applied and would no longer be subject to loss for future prohibited acts." Milchin, 2022 WL 1658836, at *3; accord Adkins, 2022 WL 14966123, at *2; Mills, 2022 WL 4084178, at *4 n.5.

**B.    ANALYSIS**

Here, there is no dispute that Petitioner is eligible to earn ETCs under the FSA and has earned 630 ETCs thus far. Dkts. 13-1 at 4; 2 at 12. However, the parties disagree about the correct application of the ETCs—specifically, whether Petitioner's earned ETCs entitle him to an immediate transfer to a halfway house.

Both parties agree that, without factoring in any ETCs under the FSA and considering only Good Conduct Time ("GCT"), Petitioner's projected release date would be April 21, 2025.[4] Dkt. 13-1 at 3. BOP projected that 365 of Petitioner's

---

[4] Petitioner was sentenced to three (3) years "supervised release" (i.e., parole), in addition to his term of imprisonment. United States v. Shults, et al., No. 8:12-cr-90-JLS, Dkt. 503 (C.D. Cal. Nov. 12, 2014). Accordingly, this "release date" technically represents a transfer to "supervised release." To avoid potential confusion with Petitioner's potential transfer to "pre-release custody" (i.e., transfer to a halfway house), the undersigned simply refers to April 21, 2025 as Petitioner's release date.

ETCs would be applied toward his early release—the maximum allowed by the statute. Id.; Dkt. 13 at 7–8. Accordingly, assuming Petitioner earns all available GCT and ETCs, Petitioner's anticipated FSA release date will be April 21, 2024. Id. Again, the parties are in agreement up until this point. Dkt. 2 at 12.

The parties also agree the remaining 265 ETCs will apply toward Petitioner's placement in "pre-release custody," i.e., transfer into a halfway house. Id.; Dkt. 13 at 5. However, Respondent notes that, pursuant to the authorizing statute, the remaining 265 of Petitioner's ETCs cannot be applied toward Petitioner's placement in pre-release custody until the remaining ETCs are "equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A); see Dkt. 13 at 5. As of November 17, 2022, accounting for GCT, Petitioner still had 886 days left in his imposed term of imprisonment, and 521 days until his projected FSA release date.[5] Dkt. 13 at 5. Accordingly, Petitioner's remaining 265 ETCs cannot yet be applied toward his release into pre-release custody.

Petitioner argues that this conclusion is somehow altered by the fact that his BOP case manager recommended him for 271 to 365 days of pre-release halfway house time. Dkt. 2 at 12. Petitioner argues that his 265 ETCs should be added to the 271 to 365 pre-release days recommended (totaling 536 days if using the lesser 271-day recommendation), resulting in a pre-release date of Oct. 15, 2022. Id. He therefore argues he is entitled to be moved to a halfway house immediately, and that this Court should release him to a halfway house on bail pending a decision on this Petition. Dkt. 16.

Petitioner is mistaken regarding the effect of his case manager's recommendation. First, Congress has given the Attorney General, and by designation

---

[5] Petitioner's GCT date is his statutorily imposed release date after Petitioner's GCTs are applied. Under the FSA up to 365 ETCs can be applied in addition to GCTs to effectively shorten an inmates sentence by up to an additional year, thereby affording inmates an earlier "FSA release date." Any additional ETCs over 365 may be applied to pre-release custody, such as placement in a halfway house, but may only be applied once the remaining ETCs are "equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A).

5

the BOP, exclusive authority to determine custody placements, including home confinement; this determination is not reviewable by this Court. Reeb v. Thomas, 636 F.3d 1224, 1226–28 (9th Cir. 2011) (holding that the BOP's discretionary determination to expel the petitioner from the residential drug abuse program (RDAP) was not reviewable); 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a placement of imprisonment under this subsection is not reviewable by any court."). Accordingly, whether BOP acts upon the custody recommendation of its own case manager is solely within its discretion; this Court has no authority to review, or enforce, the BOP's case manager's recommendation.

In any case, the recommendation of Petitioner's BOP case manager does not actually alter Petitioner's imposed sentence or FSA release date. As noted above, ETCs can only be applied toward pre-release custody once the earned ETCs equal the remainder of Petitioner's sentence. See 18 U.S.C. § 3624(g)(1)(A). Regardless of the case manager's recommendation, Petitioner has 886 days until his projected GCT release date and 521 days until his projected FSA release date; accordingly, under 18 U.S.C. § 3624(g)(1)(A), his 265 days of ETC cannot yet be applied toward release into a halfway house.

As such, Petitioner's claim fails, and his Motion for Bail pending the judgment on this Petition is denied as moot.

## IV.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Court issue an Order:

(1) accepting this Report and Recommendation;

(2) **DENYING** the Petition;

(3) **DENYING** the Motion for Bail; and

(4) **DISMISSING** this action with prejudice.

## V.

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

Dated: February 27, 2023

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge